UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**GREGORY D.**

                               **Plaintiff,**                             22-CV-313Sr

v.

**COMMISSIONER OF SOCIAL SECURITY,**

                               **Defendant.**

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff applied for supplemental security income ("SSI"), benefits with the Social Security Administration ("SSA"), on July 2, 2019, at the age of 22, alleging disability due to autism, attention deficit hyperactivity disorder ("ADHD"), asthma, and allergies. Dkt. #6, p.411.

On June 22, 2021, plaintiff appeared by video conference with his mother and counsel and testified, along with an impartial vocational expert ("VE"), Mary Vasishth, at an administrative hearing before Administrative Law Judge ("ALJ"), Stephen Cordovani. Dkt. #6, pp.38-77.

Plaintiff testified that he lived alone in an apartment he moved into recently and that he paid rent from his paycheck through the New York State Employment Training Program at Allegany. Dkt. #6, pp.45-46. His work placement was at Genesee Valley Media. Dkt. #6, p.46. His employment specialist, Tom Hayden, accompanied him to the interview and checks in on him every other week. Dkt. #6, pp.47-48. He works there three days per week. Dkt. #6, p.47. Plaintiff drives himself to work. Dkt. #6, p.47. He also works at AVI as a dishwasher during the semester. Dkt. #6, pp.49-51. He completed his Associate's degree at Alfred State in media and animation in 2018. Dkt. #6, pp.52-53. Plaintiff testified that his autism hinders his ability to focus, explaining that his mind tends to wander elsewhere. Dkt. #6, p.54.

Plaintiff's mother testified that plaintiff was generally agreeable, but needs assistance to understand what he needs to do to take care of himself. Dkt. #6, p.58. She explained that things that are commonsense are challenging for him, such as making judgments about how to plan or organize what needs to be done. Dkt. #6, p.58. She testified that he will often agree even if he doesn't understand a question and does not think things through. Dkt. #6, p.59. She worries about finding him the support that he will need throughout his life. Dkt. #6, p.59. She explained that it had been a really long road for plaintiff's parent to acknowledge and accept what plaintiff's true needs are, noting that it was only after he was unsuccessful in obtaining competitive employment that they accessed services to provide vocational training. Dkt. #6, pp.59-60. She testified that plaintiff was diagnosed with pervasive developmental disorder at age three and is currently diagnosed as on the autism spectrum. Dkt. #6, pp.60-61. He

lives in subsidized housing for individuals with disabilities. Dkt. #6, pp.61-62. He obtained his dishwashing job through a friend who was aware of plaintiff's disability and was friends with the manager, who she knew was managing other individuals with disabilities. Dkt. #6, p.63. Although he needs reminders, plaintiff is capable of doing laundry, cooking and shopping. Dkt. #6, p.64.

When asked to assume an individual with plaintiff's age and education with no relevant past work experience who had no exertional limitations, but was limited to only occasional independent decision making, changes in work routine and processes, and interaction with supervisors, co-workers and the general public with no supervisory duties or strict production quotas, the VE testified that plaintiff could work as a kitchen helper or dining room attendant, each of which are unskilled, medium exertion positions or as a merchandise marker or housekeeping cleaner, each of which are unskilled, light exertion positions. Dkt. #6, pp.68-70. The VE further testified that an individual who was off task 25% of the time would be precluded from competitive employment. Dkt. #6, pp.70-71.

The ALJ rendered a decision that plaintiff was not disabled on July 8, 2021. Dkt. #6, pp.21-32. The Appeals Council denied review on February 24, 2022. Dkt. #6 p.6. Plaintiff commenced this action seeking review of the Commissioner's final decision on April 25, 2022. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related

activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient Residual Functional Capacity ("RFC"), for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 416.920(g).

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec'y*, 515 F. Supp.3d 2, 7 (W.D.N.Y. 2021), *citing* 20 C.F.R. § 416.920c(a) & (c). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific

evidence in the record to support the ALJ's findings regarding medical opinions. *Id.*, *citing* 20 C.F.R.§ 416.920c(b)(2).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.*, *citing* 20 C.F.R. § 416.920c(c)(1). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.*, *citing* 20 C.F.R.§ 416.920c(c)(2). Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec'y*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id., quoting Shawn H. v. Comm'r of Soc. Sec'y*, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020) (alteration in original).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful

activity since his application date of July 2, 2019; (2) plaintiff's asthma, autism spectrum disorder and ADHD constitute medically determinable impairments, but do not constitute severe impairments because they did not and were not expected to significantly limit his ability to perform basic work activities, and plaintiff was not, therefore, disabled within the meaning of the SSA. Dkt. #6, pp.23-32.

Plaintiff argues that the ALJ mischaracterized and cherry picked evidence to diminish the impact of plaintiff's autism spectrum disorder. Dkt. #7-1, pp.12-16. For example, plaintiff notes that he obtained his job as a dishwasher with an employer who recognized his need for vocational support and his internship through a job training program which provides job coaching. Dkt. #7-1, pp.15-16. Plaintiff further argues that it was error for the ALJ to rely upon plaintiff's activities of daily living as a marker of his functional capacity without acknowledging the support he receives to perform such activities. Dkt. #7-1, p.17.

The Commissioner responds that plaintiff failed to meet his burden of demonstrating that his autism spectrum disorder and ADHD significantly limited plaintiff's ability to perform basic work activity and that the ALJ's decision that plaintiff's impairments are not severe is supported by substantial evidence, including the opinion of psychological consultative examiner Christine Ransom, Ph.D. Dkt. #8-1, p.2. The Commissioner argues that plaintiff is asking the Court to reassess the evidence, which is not the proper role of the Court. Dkt. #8-1, p.3.

The evidence of record establishes that plaintiff was diagnosed with pervasive developmental disorder at the age of 3 following evaluation at the Kirch Developmental Services Center at the Children's Hospital at Strong Memorial Hospital where he presented with, *inter alia*, "decreased eye gaze and decreased language used in a reciprocal fashion" and demonstrated "qualitative impairment of nonverbal social interactions." Dkt. #6, p.542. He received special education services under the classification of autism spectrum disorder beginning in kindergarten. Dkt. #6, p.591.

In 2013, licensed clinical psychologist Danielle D. Morris, Psy.D., completed a modified Autism Diagnostic Observation Schedule assessment of plaintiff, age 16, observing that plaintiff

> supports 20-30% of a conversation, leaving his conversational partner to carry the interaction. He only initiates conversational topics of his interest or when he is prompted with a topic from his conversational partner. He directed a minimum of facial expressions to others and did not display empathy for other's emotions. The quality of his social overtures was weak and he did not display many social responses. The amount of shared reciprocal social communication was negligible.

Dkt. #6, p.545. Dr. Morris diagnosed autism spectrum disorder. Dkt. #6, p.545.

An assessment by Casey Roche, School Psychologist, during plaintiff's Senior year of High School in 2014 revealed that plaintiff was "able to repeat information that he has been told or repeated a number of times, but he had more difficulty appropriately describing abstract concepts related to transitioning out of his school." Dkt. #6, p.568. For example, when asked if plaintiff could describe his

transition plan, plaintiff "became visibly uncomfortable;" "shifted from a forward facing position . . . to the side of his chair;" and "did not make eye contact with the examiner while he stated that he was unsure of how to describe his transition plan." Dkt. #6, p.563. Moreover, although plaintiff indicated that he knew what services he received under his individualized education plan ("IEP"), plaintiff could not describe them and when asked what accommodations he would need at college to be successful, plaintiff indicated that he "would have to think about it." Dkt. #6, pp.563-64. The Vineland-II Expanded Interview Form completed by plaintiff's parents and teacher yielded similar results, measuring plaintiff's daily living skills as an area of strength, but his adaptive behavior in the moderately low range and his socialization behaviors in the low range when compared to other students his age. Dkt. #6, p.569.

In an assessment of plaintiff for eligibility for New York State Education Department Office of Adult Career and Continuing Education Services ("ACCES-VR"), dated June 15, 2014, Vocational Rehabilitation Counselor Diane Marie Stachowski determined that plaintiff met the most significantly disabled criteria due to his serious functional limitations, including lack of awareness of social consequences of behavior; lack of skills necessary for effective social interaction; and distracting quality of speech. Dkt. #6, pp.677-78.

In 2017, primary care providers observed that plaintiff "has a bit of an odd affect" and his communication was "somewhat limited," with one or two word responses due to his autism spectrum disorder. Dkt. #6, pp.508 & 510.

In an assessment to establish eligibility with the Office for People with Developmental Disabilities ("OPWDD"), in 2018, plaintiff's adaptive functioning was determined to be in the mildly deficient range, with relative strength in the domain of communication and relative weakness in the domains of daily living skills and socialization. Dkt. #6, p.575.

On September 13, 2019, ACCES-VR informed plaintiff that his Individualized Plan for Employment ("IPE"), was closed because he would be receiving services through OPWDD. Dkt. #6, p.761.

Christine Ransom, Ph.D., completed a consultative psychiatric examination of plaintiff on October 31, 2019. Dkt. #6, p.632. Dr. Ransom noted plaintiff's report of ADHD and observed plaintiff to be cooperative and socially appropriate with adequate expressive and receptive language skills, coherent and goal-directed thought processes and a full range of affect appropriate to speech and thought content. Dkt. #6, pp.633-34. She observed that his attention and concentration and immediate memory was intact and that he appeared to have average intellectual functioning. Dkt. #6, p.633. Dr. Ransom diagnosed plaintiff with ADHD, currently in remission on medication, and opined that "[t]here is no impairment." Dkt. #6, pp.634-35. More specifically, Dr. Ransom opined that plaintiff would

> show no evidence of limitation to understand, remember or apply simple and complex directions and instruction using reasoning and judgment to make work-related decisions, interact adequately with supervisors, co-workers and the public, sustain concentration and perform a task at a

>consistent pace, sustain an ordinary routine and regular attendance at work, regulate emotions, control behavior, and maintain well being, maintain personal hygiene and appropriate attire, awareness of hazards and precautions.

Dkt. #6, p.634.

Plaintiff was approved to participate in OPWDD's Employment & Training Program - Discovery Only beginning February 17, 2020. Dkt. #6, p.759. In an undated letter from Tom Hayden, Associate Director of Community Services at Allegany-Steuben ARC, advised that he has served as plaintiff's job coach for more than two years, explaining:

>I met [plaintiff] at a training that his employer AVI Food Service was holding pre-semester at Alfred University. [Plaintiff's] supervisor, Josie introduced us because she believed he needed help, and I was already supporting three of his co-workers. I talked with [plaintiff], gave him my business card to share with his family. [Plaintiff's] mother, Michelle, contacted me the following day. . . . Michelle started the application process to enroll [plaintiff] in our Supported Employment Program. The process took a few months before [plaintiff] was officially enrolled in the program, and I was able to officially work with [plaintiff].
>
>Observing and working with [plaintiff] is a pleasure. I have been able to work with [plaintiff] for three semesters at Alfred University Dining Hall. [Plaintiff] works the dish line. [Plaintiff] struggles with focus on the job. Often [plaintiff] does not interpret instructions well and "pretends" to have received and understand what is told to him. Staff and [plaintiff's] manager try to ensure that instructions are clear so that [plaintiff] receives them without distraction. [Plaintiff's] distractions can vary and little changes in the dish room will impede [plaintiff's] productivity. [Plaintiff] is the first to admit focus struggles but is learning that he can "re-set" the dish room for his comfort to help him be more productive.
>
>This Spring, [plaintiff] was able to start a paid internship with Genesee Valley Media in Wellsville. . . . Although this

-11-

> internship is geared much more toward [plaintiff's] interests, versus working the dish line, [plaintiff] struggles with focus. Nick, [plainitiff's] supervisor is understanding of [plaintiff's] challenges, but can be frustrated if [plaintiff] is not meeting expectations.
>
> Being able to work with and observe [plaintiff] in two very different work situations has helped me better understand [plaintiff's] vocational challenges. In both work settings, [plaintiff] can perform seventy-five percent of a job description. Without supports and understanding management, [plaintiff's] long-term employment future is not strong. [Plaintiff's] struggle to overcome his autism spectrum challenges will be ongoing for his entire working career.

Dkt. #6, p.775.

Although acknowledging plaintiff's diagnosis of autism spectrum disorder and ADHD, the ALJ determined that plaintiff's independent living; completion of an Associate's degree; and significant work activity warranted a determination that plaintiff's medically determinable impairments were not severe. Dkt. #6, p.28. More specifically, the ALJ determined that plaintiff had no limitation in any of the four functional areas: (1) remembering or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting or managing oneself. Dkt. #6, pp.28-30. In reaching this conclusion, the ALJ found the opinion of Dr. Ransom to be persuasive. Dkt. #6, p.30.

It is unfathomable to the Court how an opinion from a consultative examiner who was unaware of plaintiff's medically determinable impairment of autism spectrum disorder could be deemed persuasive. While an ALJ is permitted to rely on the opinion of a consultative examiner where the opinion is supported by and consistent

with other evidence in the record, that is not the case here. Aside from Dr. Ransom's consultative evaluation, the evidence of record consistently documents functional limitations resulting from plaintiff's neurodevelopmental disorder, including difficulty understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing himself. This dichotomy exemplifies why courts have "repeatedly cautioned ALJs not to rely heavily on the findings of consultative physicians after a single examination," particularly with respect to mental impairments. *Santoro v. Comm'r of Soc. Sec.*, 703 F. Supp.3d 376, 387 (E.D.N.Y. 2024); *See James Martin B. v. Comm'r of Soc. Sec.*, 23-CV-5170, 2024 WL 3159844, at *4 (S.D.N.Y. June 25, 2024) (recognizing that although the treating physician rule no longer applies, treating sources are most able to provide a detailed, longitudinal picture of a plaintiff's medical impairment).

It is equally perplexing that a neurodevelopmental disorder which is diagnosed based upon qualitative impairments in social interaction, qualitative abnormalities in communication, and restricted and repetitive patterns of behavior would be deemed non-severe. Although plaintiff bears the burden of proof at step two, it is not a heavy burden; the standard for a finding of severity under step two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases. *Stormie H. v. Comm'r of Soc. Sec.*, 2024 WL 3579127, at *3 (W.D.N.Y. July 30, 2024); *quoting McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014). In the instant case, the Court finds it impossible to reconcile how an individual who qualifies for vocational

rehabilitation services through ACCES-VR and OPWDD could be considered to have no limitations in their ability to perform basic work activities. As a result, the Court determines that the ALJ's findings are not supported by substantial evidence.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #7), is granted and the matter is remanded for further proceedings and the Commissioner's motion for judgment on the pleadings (Dkt. #8), is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**    Buffalo, New York
              August 21, 2024

                                **s/ H. Kenneth Schroeder, Jr.**
                                **H. KENNETH SCHROEDER, JR.**
                                **United States Magistrate Judge**